# EXHIBIT F

Westlaw.

902 F.2d 32 (Table)
902 F.2d 32 (Table), 1990 WL 58191 (6th Cir.(Mich.))
**Unpublished Disposition**
(Cite as: 902 F.2d 32, 1990 WL 58191 (6th Cir.(Mich.)))

Page 1

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.

Irene ANJESKI, Defendant-Appellant,
v.
ACANDS INC., Keen Building & Development Co., Owens-Illinois, Inc., the Celotex Corporation, Defendants-Appellees.

No. 89-1571.

May 7, 1990.

On Appeal from the United States District Court for the Eastern District of Michigan, 87-74213, Feikens, D.J.

E.D.Mich., 727 F.Supp. 331.

AFFIRMED.

Before KEITH and MILBURN, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

PER CURIAM.

**1 Plaintiff-appellant Irene **Anjeski** appeals the summary judgment granted by the district court in favor of the defendants on the ground that she failed to raise a genuine issue of material fact regarding her decedent's exposure to the defendants-appellees' asbestos products in this wrongful death diversity action. For the reasons that follow, we affirm.

I.
A.

Robert **Anjeski** ("**Anjeski**") and his wife, Irene ("plaintiff"), Michigan residents, initiated this action by filing a complaint on November 20, 1987, in which they sought damages for **Anjeski's** alleged mesothelioma as a result of his exposure to asbestos products while he worked aboard a ship in the United States Navy in 1943. They originally named fifteen manufacturers of asbestos products as defendants.

**Anjeski** died on January 24, 1988. On November 1, 1988, plaintiff filed an amended complaint bringing the action on behalf of herself and her husband's estate and alleging that **Anjeski's** wrongful death was caused by exposure to the defendants' asbestos products.

Through the course of pretrial proceedings, various defendants settled with plaintiff or were voluntarily dismissed by plaintiff. On February 9, 1989, defendant-appellee Owens-Illinois, Inc., an Ohio corporation, moved for summary judgment on the ground that plaintiff could not demonstrate that **Anjeski** was exposed to its products or that its products were a substantial factor in causing his mesothelioma. Defendants-appellees Celotex Corp., a Delaware corporation, and Keene Building & Development Co., a New York corporation, filed similar motions soon thereafter. The district court heard oral argument on the motions on March 28, 1989. Plaintiff opposed the motions by arguing that the deposition testimony of Homer Kilpatrick created a question of fact with regard to **Anjeski's** exposure to defendants' products.

On April 25, 1989, the district court issued an opinion and order in which it granted the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

902 F.2d 32 (Table)
902 F.2d 32 (Table), 1990 WL 58191 (6th Cir.(Mich.))
**Unpublished Disposition**
(Cite as: 902 F.2d 32, 1990 WL 58191 (6th Cir.(Mich.)))

Page 2

defendants' motions for summary judgment on the ground that plaintiff's evidence would not allow a rational trier of fact to conclude that **Anjeski** was exposed to the particular asbestos products manufactured by the defendants. Plaintiff's timely appeal followed.

B.

**Anjeski** was in the Navy from 1943 through 1946 and served on two ships: the USS Lapwing and the USS Braine. He reported aboard the Lapwing in June 1943 as a Fireman Third Class. He received several promotions, and eventually reached the rank of Watertender Second Class before being transferred to the Braine in January 1946.

**Anjeski** was not deposed before he died. It is disputed whether **Anjeski's** only exposure to asbestos during his life occurred on the Lapwing. It is not disputed that mesothelioma can be caused by exposure to asbestos, and, compared to asbestosis, the disease can arise from a relatively brief period of exposure to asbestos. [FN1]

It is undisputed that the only witness available to testify concerning **Anjeski's** possible exposure to any asbestos products aboard the Lapwing is Homer Kilpatrick, who was stationed aboard the ship from 1941 until mid-1944. Kilpatrick was deposed on January 25, 1989, and plaintiff intended to rely solely upon his deposition at trial to prove **Anjeski's** exposure to defendants' products.

**\*\*2** Kilpatrick and **Anjeski** served on the Lapwing together for approximately six months, and the ship was at sea during most of that time. Kilpatrick testified that he was not **Anjeski's** superior and there were several levels of staff between them. Consequently, he never gave **Anjeski** a direct order, nor did he have any personal knowledge of **Anjeski's** day-to-day activities. However, Kilpatrick testified that through his experience in the Navy he was familiar with the duties of firemen and watertenders aboard the Lapwing.

Kilpatrick testified that he remembered **Anjeski** as a fireman on the Lapwing. He testified that as a fireman and a watertender, **Anjeski** would have spent the majority of his time tending the boilers in the fireroom.

Kilpatrick testified that as a boatswain, he ordered all of the ship's supplies, including asbestos products used in the fireroom, the engine room, the gunnery and supply departments, and other ship departments. He testified that crews from different departments would sometimes reject the asbestos products sent to the ship. When this happened, he testified that he was responsible for having the products returned to the ship's suppliers.

Kilpatrick testified that the products that the crews retained were sent to the various departments that ordered them, including the fireroom, the engine room, and the gunnery and supply departments. He testified that some asbestos products were stored on a supply shelf in the fireroom. The asbestos products were usually packaged and stored in cardboard boxes.

Kilpatrick testified that he was "pretty sure" that at various times while he was on the Lapwing, the ship received shipments of Kaylo, BEH, Carey, and Johns-Manville asbestos pipe insulation. (The defendants or their corporate predecessors manufactured Kaylo, BEH, and Carey products.) *However, Kilpatrick testified that there were times when a particular brand of asbestos product was not on board, and there were times when none of the defendants' products were on board. Moreover, he testified that he could not remember whether any of the defendants' products were stored or used in the fireroom when **Anjeski** was on the Lapwing.*

Kilpatrick testified that the asbestos products were usually used by shipyard workers who made repairs on the ship. He testified that usually half the crew would be given leave while the Lapwing was in port and repairs were made. He also testified that he could not say whether **Anjeski** was on board while shipyard workers made repairs on the ship.

Kilpatrick testified that if the ship were at sea, or if shipyard workers were not available, and repairs were needed, one or more firemen would make them, and thus it was possible that **Anjeski** would have made repairs using asbestos pipe insulation and other asbestos products. However, he testified

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

902 F.2d 32 (Table)  
902 F.2d 32 (Table), 1990 WL 58191 (6th Cir.(Mich.))  
**Unpublished Disposition**  
(Cite as: 902 F.2d 32, 1990 WL 58191 (6th Cir.(Mich.)))

Page 3

that he never saw **Anjeski** use any asbestos products, nor did he know if **Anjeski** actually made any repairs.

The parties agreed at oral argument that because Kilpatrick's deposition represented the only evidence plaintiff would introduce regarding product identification, the district court should apply the standard applicable to directed verdicts to the summary judgment motions. Remarkably, no mention was made of the United States Supreme Court's 1986 trilogy of summary judgment cases. [FN2] The district court characterized the motions before it as presenting the question of "whether a jury could reasonably infer from [Kilpatrick's] deposition ... that plaintiff's decedent was exposed to the defendants' products." The district court then determined that plaintiff's evidence of product identification "did not preponderate" in plaintiff's favor.

**3 The principal issue presented in this appeal is whether the district court erred in granting summary judgment in favor of the defendants.

II.

Plaintiff argues in her brief that the district court exceeded its power in deciding a summary judgment motion, and further argues that

[t]he fundamental problem with the district court's approach is that the court engaged in what is not permitted to it: the weighing of inferences ... the court's only function [in deciding a summary judgment motion] is to determine whether a factual dispute exists.

Appellant's Brief at 13.

Plaintiff's arguments reveal a lack of understanding of summary judgment practice in the federal courts, at least since 1986. As the Supreme Court has explained,

[i]f the defendant ... moves for summary judgment ... based on the lack of proof of a material fact, the judge must ask himself ... whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict--"whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (quoting *Improvement Co. v. Munson*, 14 Wall 442, 448 (1872)).

Plaintiff's arguments in her brief reflect no familiarity with the "new age" of summary judgment brought about by *Anderson, Celotex Corp. v. Catrett*, 477 U.S. at 317 (1986), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). [FN3] See *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-81 (6th Cir.1989). Those decisions made it clear that a federal district court's evaluation of a motion for summary judgment necessarily involves weighing the evidence and the inferences drawn therefrom to determine whether a "*genuine* issue of *material* fact" exists. *Anderson*, 477 U.S. at 248 (emphasis in original). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Id.* at 247-48 (emphasis in original). Using the district court's terminology, only by determining whether the evidence "preponderates" can a district court decide whether there is more than one reasonable conclusion to be drawn from the material facts.

Ironically, one of the landmark summary judgment cases plaintiff ignores, *Celotex*, is an asbestos products liability wrongful death action. There, *Celotex* moved for summary judgment, arguing that the plaintiff could not establish exposure to its asbestos products. The plaintiff argued that *Celotex* had failed to show that her decedent had not been exposed to its products. The Court rejected the plaintiff's argument, explaining that

**4 we find no express or implied requirement in Rule 56 that the moving party support its motion

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

902 F.2d 32 (Table)
902 F.2d 32 (Table), 1990 WL 58191 (6th Cir.(Mich.))
**Unpublished Disposition**
(Cite as: 902 F.2d 32, 1990 WL 58191 (6th Cir.(Mich.)))

Page 4

with affidavits or other similar materials *negating* the opponent's claim....

\* \* \*

[W]e do not think [that] ... the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof. Instead, as we have explained, *the burden on the moving party may be discharged by "showing"--that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case.*

*Celotex*, 477 U.S. at 323-25 (emphasis added).

On appeal, a district court's grant of summary judgment is reviewed de novo. *Pinney Dock and Transport Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.), *cert. denied*, 109 S.Ct. 196 (1988). In our review, we must view all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987).

### III.

"[T]he threshold requirement of any products liability action is identification of the injury-causing product and its manufacturer." *Abel v. Eli Lily and Co.*, 418 Mich. 311, 324, 343 N.W.2d 164, 170, *cert. denied*, 469 U.S. 833 (1984). Plaintiff must also establish the existence of proximate cause between his injury and the injury-causing product. *Brisboy v. Fibreboard Corp.*, 429 Mich. 540, 548, 418 N.W.2d 650, 653 (1988). Michigan law recognizes that a tort may have several proximate causes, and when a tort arises from exposure to two or more asbestos products, each exposure may be deemed to be a proximate cause of the injury as long as each exposure "was a substantial factor in producing the injury." *Id.* This is the same test of proximate causation stated in Section 431 of the Restatement (Second) of Torts. "To establish proximate cause under Section 431, a plaintiff must establish that the manufacturer's asbestos product was used at the specific site within the workplace where he worked." *Roberts v. Owens-Corning Fiberglas Corp.*, 726 F.Supp. 172, 174 (W.D.Mich.1989) (citing *Roehling v. National Gypsum Co.*, 786 F.2d 1225, 1228 (4th Cir.1986)); see also *Brisboy*, 418 N.W.2d at 653-54.

Thus, plaintiff's first step in assembling a case to hold the defendants liable is to produce some evidence that their brands of asbestos products were used in the fireroom when **Anjeski** worked there. The district court concluded that a jury would have to take several long, speculative leaps from Kilpatrick's testimony to find that the defendants' products were in the fireroom with **Anjeski** during the six months when the two served aboard the Lapwing together, and that a reasonable trier of fact would not take those long leaps. The district court concluded that plaintiff failed to identify "the injury-causing product and the manufacturer," and she also failed to offer evidence that would allow a reasonable trier of fact to determine that **Anjeski's** exposure was of such a nature and duration that it was a substantial factor in producing his injury. We agree.

\*\*5 With regard to the nature of the exposure, plaintiff must show that **Anjeski** was exposed to asbestos dust. This requirement is satisfied by Kilpatrick's testimony that **Anjeski** would have used asbestos products in making repairs in which asbestos products were torn, cut, ripped, or handled in a similar manner. There is no indication in the record, however, that exposure to asbestos products that are packaged in cardboard boxes and stored on shelves is an exposure that would be a substantial factor in causing a plaintiff's injuries, nor was there any evidence regarding the duration of any alleged exposure to any of the defendants' products.

Plaintiff insists that a jury could infer from Kilpatrick's testimony that the defendants' products were used in the fireroom when **Anjeski** worked there. Reviewing Kilpatrick's deposition in the light most favorable to the nonmoving party, we agree with the district court that plaintiff produced evidence that some of defendants' products were in the Lapwing fireroom at some time while **Anjeski** was stationed on the ship. However, Kilpatrick's testimony does not identify or give rise to any inferences identifying which products were in the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

902 F.2d 32 (Table)
902 F.2d 32 (Table), 1990 WL 58191 (6th Cir.(Mich.))
**Unpublished Disposition**
**(Cite as: 902 F.2d 32, 1990 WL 58191 (6th Cir.(Mich.)))**

Page 5

fireroom. In other words, Kilpatrick's deposition does not put Kaylo, or any other specific asbestos product, in **Anjeski**'s work site.

For example, Kilpatrick testified that there were times during his tour on the ship when none of the defendants' products were on the Lapwing. Additionally, he could not say whether any of the defendants' products were stored in the fireroom when **Anjeski** was on the Lapwing. Kilpatrick further testified that sometimes, after he sent asbestos products to various ship departments, various crews might return the products to him to return to the vendors. As the district court found:

The products used in the boiler room may have been all Kaylo, all Owens-Illinois, all Celotex, all U.S. Gypsum, or all Johns-Manville, or some combination of any of these products. There is no basis from which to infer what that combination was because Kilpatrick does not tell us.

Plaintiff further claims that "there is no record support for the finding that asbestos products were used anywhere but the rooms in which [**Anjeski**] worked." Our review of Kilpatrick's deposition reveals that this claim is groundless. Kilpatrick testified that asbestos insulation was used in both the fireroom and the engine room. He also testified that packages of asbestos insulation were delivered to the fireroom, the engine room, the gunnery department, the supply department, and other departments "that needed the equipment." Plaintiff claims that because Kilpatrick said the word "equipment" instead of "asbestos products," we cannot know with absolute certainty that he was referring to asbestos products in one of his responses. This claim barely raises a "metaphysical doubt as to the material facts." *Street*, 886 F.2d at 1480 (quoting *Matsushita*, 475 U.S. at 586). On summary judgment, however, as we have explained, more is required than metaphysical doubt. [FN4]

**6 The district court next found that the evidence would not allow a rational jury to find that **Anjeski** ever made repairs aboard the Lapwing. Our review leads us to conclude that it would not require a totally irrational leap of conjecture to find, based on Kilpatrick's testimony, that **Anjeski** made repairs aboard the Lapwing. However, because plaintiff has not produced any evidence to show that **Anjeski** used any of the defendants' products in making repairs, her claims against these three defendants-appellees, arising from any repairs **Anjeski** might have made, fail.

Plaintiff next argues that the district court imposed too heavy a burden of proof upon her under Michigan law. As we explained above, plaintiff's arguments reveal a lack of understanding of summary judgment practice in federal courts and, in this case, Michigan products liability law.

Plaintiff attacks the district court's decision as conflicting with decisions from many other jurisdictions. As the district court properly concluded, however, the cases upon which plaintiff relies only serve to highlight the deficiencies in her case. We agree with the district court that the cases plaintiff cites can all be distinguished on significant grounds except for those cases that support the district court's insistence upon a showing of product identification in **Anjeski**'s work site.

Plaintiff argues for the first time on appeal that the district court should have invoked the doctrine of alternative liability and required the defendants to prove that their products were not on the Lapwing when **Anjeski** was aboard. We reject this argument, as "[i]t is a well-established principle of appellate review that appellate courts do not address claims not properly presented below." *Chandler v. Jones*, 813 F.2d 773, 777 (6th Cir.1987); *see also Pinney Dock*, 838 F.2d at 1461.

IV.

Accordingly, for the foregoing reasons, the judgment of the district court is AFFIRMED.

FN1. *See Larson v. Johns-Manville Sales Corp.*, 427 Mich. 301, ---- 399 N.W.2d 1, 4 (1987).

FN2. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

902 F.2d 32 (Table)  
902 F.2d 32 (Table), 1990 WL 58191 (6th Cir.(Mich.))  
**Unpublished Disposition**  
**(Cite as: 902 F.2d 32, 1990 WL 58191 (6th Cir.(Mich.)))**

Page 6

*Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986).

FN3. At oral argument plaintiff's counsel did insist that he was familiar with the Supreme Court's trilogy of 1986 cases on summary judgment.

FN4. Plaintiff makes a number of similarly groundless and immaterial arguments in her brief regarding how she believes the jury could have interpreted Kilpatrick's testimony. We find the balance of her arguments on the issue of product identification to be based upon bizarre interpretations of Kilpatrick's deposition wholly unsupported by the record.

902 F.2d 32 (Table), 1990 WL 58191 (6th Cir.(Mich.)), Unpublished Disposition

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.